MARGERY H. SMULLIN ET AL., APPELLEES, V. IDA M. WHARTON ET AL., APPELLANTS.

FILED FEBRUARY 6, 1909. No. 15,840.

1. Wills: CONSTRUCTION: ALLOWANCE TO WIDOW: INTEREST. As construed upon a final adjudication, the will of G. B. bequeathed and devised a 'portion of his estate to a trustee, the income, and, if necessary, a portion of the body of the trust estate, to be applied to the maintenance and support of I. B., his wife, the surplus of the income to be divided between his collateral heirs, and upon the death of I. B. the whole of the trust estate to pass to and be divided between such heirs. There was nothing in the will fixing the amount which I. B. might receive and retain annually for her maintenance. In an action seeking a decree fixing such sum as she might retain and for an accounting, the district court by its decree fixed the amount at $5,400 per annum. *Held*, That the legal effect of the decree was the same as though that sum had been written in the will, and should take effect from the date of the death of the testator, but subject to the deduction of all sums received from the trust estate by said I. B.; and for the purpose of ascertaining the amount due, if anything, an accounting should be had and decree rendered in favor of I. B. or against her as the balance might appear, but that in rendering such account neither party would be entitled to interest upon annual balances.

Smullin v. Wharton.

2. ————: CONTEST: COSTS. Where there was a contest of such will, the contestants seeking to prevent the probate thereof, and which contest caused long and expensive litigation, the will being finally admitted to probate, the reasonable and necessary attorneys' fees and expenses in defending against such contest should be charged to the estate devised and bequeathed by the will. And the fact that other property, named and specified in the will, was devised and bequeathed to I. B., but which was, after the making of the will, and before the death of the testator, conveyed and transferred to her personally, would not affect her rights, as the title to such property was not involved in the contest of the will.

3. ————: COSTS. On a trial of an action against I. B. and the trustee for an accounting, and which trial necessarily resulted in the decree fixing the amount which I. B. was entitled to retain annually from the trust fund in her hands for her maintenance and support, under the provisions of the will as construed, there being no other method of ascertaining and fixing such amount, the same not having been previously ascertained, the taxable costs should be charged to the estate, and not against I. B. personally. The language of LETTON, J., quoted in the opinion, had no reference to the accumulation of costs in subsequent proceedings.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Reversed with directions.*

*W. W. Morsman,* for appellants.

*John C. Cowin, J. H. McIntosh* and *F. A. Brogan, contra.*

REESE, C. J.

For a statement of the issues and facts in this case up to the filing of the opinions reported in 73 Neb. 667-711, we need only refer to the record in the report of the decisions. The cause was remanded to the district court, and by the mandate issued by the clerk of the supreme court, of date October 8, 1907, the district court was directed to "take an account of and ascertain what sum per annum is sufficient to support and maintain the appellee, Ida M. Wharton using the family homestead, according to the style of living to which she was accustomed at the time of the death of the testator, and to charge the pay-

ment of the same annually during her life upon the income of the trust estate devised to Westerfield, and upon the corpus thereof if the income is insufficient, and according to the conditions of said trust; second, to charge the said appellee as trustee in trust to pay and distribute annually all such surplus income from the trust estate, if any there be, after providing for the maintenance of the appellee as aforesaid, and such gifts to charitable purposes as she may desire to make from time to time, not exceeding $10,000 in all, to the brothers and sisters of the testator, share and share alike, the issue of deceased brothers and sisters, if any such issue, to take the share of the deceased parent; third, for such other accounting and decree as may be necessary to carry fully into effect the provisions of the constructive trust declared to exist and of the trust declared by the will in Westerfield, and according to the views expressed in the opinion by Chief Justice HOLCOMB, and the subsequent opinions of this court." The commanding part of the mandate is practically a repetition of the above, and need not be further copied here. A copy of the opinion by Judge LETTON (73 Neb. 706) was attached to the mandate and made a part of it.

Upon the reappearance of the case in the district court, a number of amended and supplemental pleadings were filed, but it is not deemed necessary to set them out, as they consisted principally in shaping the issues to correspond with the mandate and opinion of this court. They also contained statements of accounts of moneys received and expended by defendant and the trustee, and a list of the property of which the testator died seized. Defendant claimed that the amount of money to which she was entitled, as of her own, absolutely, out of the trust estate, was $7,200 per annum, as and for her maintenance according to her previous style of living, while plaintiffs insisted that $2,000 per annum would be a sufficient allowance. The cause was tried to the district court, which resulted in an extended and elaborate find-

Smullin v. Wharton.

ing of facts and decree fixing the amount which defendant could retain for her maintenance and support at $5,400 per annum, the allowance beginning January 1, 1908, and also allowing her to make donations to charitable purposes, as indicated in the will, and approving and allowing her for moneys paid out for taxes, improvements of the trust property, and directing that the same be paid out of the trust fund for her reimbursement. Her claim for moneys paid for attorneys' fees and expenses growing out of the litigation in the contest of the will of the testator by plaintiffs was allowed in part, and the costs of this suit were adjudged against her personally. From this decree she appeals, assigning as error the ruling of the district court limiting the allowance of $5,400 for her maintenance to begin January 1, 1908, instead of June 1, 1895, the date of the death of the testator, and refusing to allow interest at 7 per cent., that the court erred in not allowing her a sufficient sum for her expenses incurred in the litigation in which the will was established and admitted to probate, and that the court erred in adjudging her to pay the costs of this action. The case is brought here upon the pleadings, the findings and decree alone. Defendant presents no bill of exceptions. All orders and parts of the decree allowing her for moneys expended, payment of commissions, and for services of the trustee, in fact all findings not involved in the three assignments above pointed out, stand affirmed, approved and as final, and will not be noticed herein. There is no appeal from the action of the trial court in fixing the amount to which defendant is to be entitled at $5,400 per annum, and that part of the decree will stand without review, save as to the date from which the allowance is to be made, and, in case it is directed to have its beginning at an earlier date, upon the question of interest.

The contention of defendant is that the allowance, if it might be so designated as determined by the trial court, is and was the first that it has at any time been judicially, or otherwise, ascertained as to what is meant by

the disposition of the property contained in the will, and therefore it is of the same import and effect as if it had been written in the will specifically and must be now so treated; that, had this provision been written in the will, there could be no question but that defendant would have been entitled to that sum out of the trust estate annually from the date of the death of the testator; that the decree of the district court fixing the amount per annum which defendant might retain as hers absolutely should be treated in the same way and governed by the same rule. It is claimed by defendant that, since the estate has been in constant litigation from the time of the proposing of the will for probate to the present, she has not been able to realize the full allowance, and therefore an accounting should be had; that she be credited with the said sum of $5,400 each year since the death of the testator, and charged with the amount received out of the trust estate and applied to her own use, a balance struck, and if the amount so received and applied by her should be less than the sum fixed, that the difference be decreed to her, with interest thereon from the close of each year to the present time, at the rate of 7 per cent. per annum; that the fixing of the date at January 1, 1908, in the decree cuts off such accounting and is to the prejudice of defendant. It is insisted that defendant has not received to her own use, for any one year, the amount so fixed, and that there is due her, of principal and interest, under this contention, the sum of $63,077, which the trial court refused to allow. Upon the other hand it is contended by plaintiffs that it was within the jurisdiction and power of the district court to fix upon a date when the allowance should begin to run; and that, since the defendant has had during the time named sufficient to supply her needs, without reference to whether the same was supplied in part from her own means or from the trust estate, and since no greater demand has been made by her than for the amount actually received, no greater allowance should be made.

As finally construed by this court, the will created a trust or duty on the part of the defendant to distribute the surplus income of the trust estate annually, after supplying her own wants, among the designated relatives of the testator, who to that extent were made legatees under the will; that, while the will was silent upon the subject, yet sufficient was shown of the requests of the testator to his wife, and her agreement thereto, to warrant the reading into the will the provision thus agreed to by her providing for his relatives. By the terms of the will the subsequent conveyances and transfer by the testator of certain property to his wife, and, as held by the former decisions of this court, the property so conveyed and transferred to the wife, forms no part of what is termed the trust estate. As said by Judge LETTON (73. Neb. 708), in referring to this property: "With this property so conveyed the *cestuis que trustent* have no concern whatsoever. They have no interest in it. It belongs to Mrs. Wharton. Both the property itself and the income from it are hers to do with as to her seems best." This being true, it is claimed that, since she is limited to the $5,400 per annum, it would not be equitable to compel her to rely to any extent upon her own means for her support, thus depleting the amount to which she is entitled, and to the same extent increasing the surplus going to plaintiffs; that, if she is entitled to withhold the sum named under the provisions of the will of her deceased husband, this has been her right each year since his decease, but the segregation of said sum from the trust estate and the distribution thereof has been prevented by the litigation in which the estate has been continuously involved, and has prevented the receipt of the same by her and the distribution of the surplus. Defendant demanded of the court that a finding and decree be entered directing the trustee to pay her the said sum of $5,400 for each year ending the 1st day of June, commencing June 1, 1895, the date of the death of the testator, less the amounts received by her from said estate each year, with accrued

interest. This the court refused to do, holding, "as a mat-
ter of law, that the defendant Ida M. Wharton is not en-
titled to recover from the trust estate any part of the sum
of $5,400 for any prior year, for the reason that the evi-
dence fails to show that during any such year she actu-
ally expended for her support more than she received dur-
ing the year from the trust estate."

As above suggested, the first and principal question
presented is from what date should the allowance be made
to run? If the defendant's contention that the effect of
the decree is that the sum of $5,400 should, by virtue of
the decree, be treated as if written in the will in terms,
it would seem that it should have been held that the sum
thus ascertained as the amount to be retained for the sole
use of defendant must date from the death of Mr. Boggs,
the testator. The provision of the will, as finally con-
strued, is that defendant shall receive to her own use
from the trust estate a sufficient sum of money annually
to maintain and support her according to her standard of
living prior to the death of her husband, no definite sum
being named. The district court by its decree has said
that the amount of money annually necessary to such
maintenance is $5,400. This, if correct now, must have
been the correct amount during the whole time since the
right accrued, else it would be fluctuating and changing
each year, and nothing could be said to be fixed or de-
termined by the decree, the whole inquiry remaining open
for modification and change by any subsequent ruling.
This is not, and cannot be, the case. The amount fixed
by the court is to stand as a permanent finding and de-
cree. It is a judicial declaration that the will shall read
"$5,400 per annum to defendant, the surplus to plain-
tiffs." If this be correct, it would seem that the question
is one of easy solution. Treating it as though the sum
fixed by the court was within the will, as we must, it fol-
lows that defendant has been entitled to the retention
annually from the trust fund of the amount named. The
rule declared by some of the English courts seems to be

that, if the annuity is payable from the body or principal of a fund, the first payment is due at the end of the first year after the death of the testator. But, if it is payable only out of the interest or income of the fund, it becomes due at the end of the second year. 1 Roper, Legacies, p. *877. The reason for this distinction arises out of the fact that in the latter case there must be sufficient time after the settlement of the estate for the interest upon the principal fund to accumulate. The rule, however, has been questioned, and by some it has been held that the annuity would become due at the end of the first year in either event. See *Estate of Flickwir*, 136 Pa. St. 374.

It is an elementary rule that the provisions of a will take effect and become operative at the time of the death of the testator. By the provisions of the will itself, unaided by extrinsic evidence, there is no specific trust imposed upon defendant with reference to the income or body of that portion of the estate devised and bequeathed to the trustee. The clause included in the trust provision conferring any rights or interest in the estate is the fourth thereof, which makes it the duty of the trustee, upon the death of the wife of the testator, defendant herein, to divide the remaining portion of the trust estate equally between his brothers and sisters, or, in case of the decease of any of them leaving issue, that such issue receive the portion that the parent would have received had he or she been living. But, as has been declared in the previous decisions, a contemporaneous conversation and agreement between the testator and his wife created a trust in their behalf, said trust being engrafted upon and read into the will, doubtless as giving effect to the trust created in and by the will. By the terms of the mandate issued from this court to the district court, the latter court was "commanded, without delay, to take an account and ascertain what sum per annum is sufficient to support and maintain the appellee, Ida M. Wharton, using the family homestead, according to the style of living to which she was

accustomed at the time of the death of the testator, and
to charge the payment of the same annually during her
life upon the income of the trust estate devised to Wester-
field, and upon the corpus thereof if the income is insuffi-
cient, and according to the conditions of said trust." This
command was the warrant of authority to the district
court to make that inquiry. There is no intimation that
the inquiry should be limited to the present or future, no
time limit being suggested. If the will, when considered
in the light of the agreement of the parties, the agreement
being a part thereof, as between the testator, his wife and
plaintiffs, created and suggested the trust, it must be con-
sidered as a part thereof, and as taking effect at the time
of the death of the testator, and therefore the district
court had not the power to impose the limitation as to
time. We are persuaded that this must be the case, since
it was evidently not the intention of the testator that his
wife should in any event be compelled to maintain her-
self from her own estate, for it is expressly provided in
the will that the trustee shall deposit in the bank to the
credit of defendant during her life, for her own use, all
rents, issues and profits of the trust estate, such deposits
to be made promptly upon the collection of the income.
Nothing could be plainer than that it was the purpose of
the testator that his wife should have her living and
maintenance out of the trust estate, and that the property
conveyed and bequeathed to her should be free from this
burden, but should be hers absolutely. From the plead-
ings, findings and decree it is apparent that she has not
received the full amount which it is now for the first time
established is given her by the will from the trust estate,
but that she has received the same in part. An account-
ing will have to be had, in which she will be credited with
the sum of $5,400 annually since the first day of June,
1895, and charged with what she has received and appro-
priated during that time. Should a balance be found due
her, the same should be decreed to her out of the trust
estate. Should it be found that she has received more

than the amount of such allowance, she will be required to refund the excess. As to the demand for interest at the rate of 7 per cent. upon the several balances from the end of the year for which they were due, there can be little, if any, doubt but that the general rule of law is that, in ordinary cases of legacies bequeathed, the legatee is entitled to interest at the legal rate from the time they could be legally demanded. In the case *In re Woodward's Estate,* 78 Vt. 254, the question arose as to when pecuniary legacies would begin to draw interest, and it was held that, under the law of that state, interest would begin to accrue at the end of the first year from the death of the testator, unless otherwise provided in the will. The case is annotated in 6 Am. & Eng. Ann. Cas. 524, and the decisions of the courts of this country are quite thoroughly collated. From the citations given, we conclude that, in the absence of modifying statutory provisions, that is the general rule. It may be suggested that probably the rule is modified by the statutes of this state. Sections 244, 245, ch. 23, Comp. St. 1907, provide, in substance, that the county court at the time of granting letters testamentary shall make an order allowing to the executor a time for disposing of the estate and paying legacies, which may be, in the first instance, one year and six months, but that time may finally be extended to three years. By sections 288 and 289 it is provided that, after the proper allowances have been made for the support of the family of the deceased, the amounts due legatees from the estate may be distributed and assigned to those entitled to participate therein, and by section 290 the distribution must be by decree, naming the parties entitled to such participation, and they shall (then) have the right to "demand and recover their respective shares from the executor." By these sections it would appear that none of the legacies are due and demandable until after the entry of the decree provided for, and therefore they could draw no interest prior to that date. If this be the

case there could be no interest allowed in any event until after the termination of the litigation over the final admission of the will to probate and the necessary proceedings thereafter leading up to the decree. Should these conclusions be applied, it would be necessary to compute the interest beginning with the event named. However, we are of opinion that, under the peculiar circumstances of this case, the defendant would not be entitled to interest on the unpaid portion of the allowance fixed by the district court subsequent to the final probate of the will and the necessary proceedings thereafter in the county court, the trust estate being largely in her own hands and subject to her control. So far as we are able to ascertain from the record she presents here, she made no demand nor effort to obtain the right to the use of more of the estate than she actually appropriated to that purpose. True, she was not at fault for this, as the estate has been in constant litigation, and, until the entry of the decree by the district court, the amount to which she was entitled for her own use was unknown, and, while it was not within the power of the district court to deprive her of the allowance for the full time contemplated by law, yet it was a proper exercise of its jurisdiction to disallow the accumulation of interest. We therefore hold that the defendant is entitled to the said sum of $5,400 annually from the date of the death of the testator, to be paid out of the income of the trust estate, less the amount received by her, but that she is not entitled to interest thereon for any portion of said time, nor is she chargeable with interest should it be found that she has received and appropriated more than the annual allowance made. In this the court did not err.

In the opinion by Judge LETTON (73 Neb. 709), it is said: "Mrs. Wharton's reasonable expenses in the litigation in which the will was established should be paid out of the whole estate taken under the will, including taxable costs and reasonable attorneys' fees. The taxable costs in this case should be adjudged against Mrs. Wharton per-

sonally, each party paying their own attorneys." It is possible that this language may have been misapprehended or misconstrued by the district court, as by the findings and decision of this court, and the second finding of the district court on the hearing now here on appeal, the property conveyed and transferred to Mrs. Wharton vested in her absolutely and unconditionally upon the conveyance and transfer, and, as said in the finding, "the said George H. Boggs did not die seized of the same." It must be apparent therefore, that in the language above quoted the writer of the opinion referred only to the estate devised and bequeathed as "the whole estate taken under the will," and that the costs and expenses therein referred to as payable out of the whole estate should be paid out of the estate thus transferred; but that such payment should not in any way deplete the amount to be paid or retained by Mrs. Wharton for her maintenance and support. Upon this part of the case the eighth finding of fact, which is too long to be here quoted, is not very clear. Among other things it is said, in substance, that the separate estate of Mrs. Wharton, acquired as the donee of the real and personal property given her after the execution of the will, and prior to the death of Mr. Boggs, and which was of about the same value as the estate transmitted by the will, received an indirect but real benefit from the services of counsel in the litigation growing out of the contest of the will. That such benefit was taken into consideration by her counsel in fixing the amount of their charges, and should be apportioned accordingly. That one-third thereof should be borne by "the estate indirectly benefited, and two-thirds thereof by the estate directly benefited"; that $10,333.33 of the $15,500 paid out as attorneys' fees should be charged to and paid by the trust estate, and to which should be added the sum of $340 paid out for expenses, making a total of $10,673.33; that the value of the trust estate, which included $10,000 bequeathed to Mrs. Wharton, was $135,000, $125,000 thereof going to the trustee; that the trust estate

should therefore be charged with the payment to Mrs. Wharton of 125-135 of the $10,673.33, being $9,882.90. It is true, as claimed by counsel for appellees, that there is no bill of exceptions preserved by appellant to which we can refer for the evidence upon this feature of the case, but we are persuaded that enough is shown by the record and findings to justify a review of this question. As we have hereinbefore said, it is well settled by the former opinion that the reasonable expenses made in probating the will should be paid out of the estate devised and bequeathed. This must of necessity include the whole expense, since the title to the property conveyed and assigned to defendant by her husband constituted no part of the estate to be affected by the will. Her title to that property did not depend upon the validity of the will. Had probate been finally denied, the property would still have been hers. Then why should she be required to defray any of the necessary expense of that litigation out of her own estate, except in so far as she was directly interested? We fail to see any reason why she should. Instead of the trust estate paying 125-135 of two-thirds of that expense, it should pay that proportion of the whole, less the amount to be deducted on account of the $10,000 interest she had in the bequeathed estate, in order to equitably reimburse defendant what she has reasonably and necessarily expended in that litigation. The question as to whether the $15,840 was a reasonable and fair charge can be further investigated, if deemed necessary.

Lastly, it is insisted that the district court erred in taxing all costs to defendant. We grant that a large discretion is vested in the trial courts in the matter of the taxation of costs under section 623 of the code. But, as held in *Wallace v. Sheldon*, 56 Neb. 55, and *In re Clapham's Estate*, 73 Neb. 492, this discretion is not an arbitrary one, but a legal one, to be exercised within the limits of legal and equitable principles. It is suggested that in the opinion of the district court the statement contained in the above excerpt from the former opinion in this case

that "the taxable costs in this case should be adjudged against Mrs. Wharton personally" was intended as imposing upon her all the costs which might be made throughout the whole of the litigation, without reference to its length, or whether or not she was in the wrong. There can be no doubt but that what was in the mind of the writer of that opinion was that the costs of the case to that time, including that appeal, should be taxed to her. It would be wholly inequitable and unreasonable to say that whether she be found to be in the right or wrong, or if the litigation should be protracted wrongfully and against her wish or desire, all the costs which might be made in the future should be taxed to her, without reference to the result of the litigation. This would be giving a weapon to one side during the future continuance of the litigation, and imposing a handicap upon the other, which neither the law nor this court ever contemplated. It was impossible for either party to this action to say, prior to the decree in this case, just what amount of money defendant could legally and safely use for her maintenance and support. Any disbursement she might have offered to plaintiffs could have been rejected and made the source of almost endless litigation, for each year's apportionment would have furnished new grounds for legal contest. The rights of no one were settled until adjudicated by the court. It was as necessary for one side as the other that all ground for contention should be removed. There is no finding or decree fastening any malversation, fraud, or wrongdoing upon defendant or her husband, the present trustee. True, the court did not allow her to retain as much of the trust fund for her maintenance as she desired, but more was allowed than plaintiffs were willing to grant. In view of all the circumstances, it would seem but just that the taxable costs of the trial and this appeal be paid out of the trust estate, each party paying their own attorneys' fees. The order taxing the costs to defendant Ida M. Wharton is reversed, with directions to tax the taxable costs to the trust estate.

The judgment of the district court, in so far as the matters here discussed are concerned, is reversed, and the cause is remanded for further proceedings and decree in accordance with law and this opinion.

REVERSED.

LETTON, J., dissenting.

I am unable to take the same view of the rights of the parties in this case as that expressed in the opinion of the chief justice. In the second opinion in the case, written by HOLCOMB, C. J. (73 Neb. 705), the following language is used: "The former opinion should be accordingly modified, and the trust property held to have *vested in the collateral heirs* of the testator named in the will, *subject to the use of the net* annual income and the principal estate by the appellee, Ida M. Wharton, as the same may be reasonably necessary and required to support and maintain her in the style of living she had been accustomed to, and subject to her right to devote not exceeding $10,000 to charity." In the body of the opinion the following expressions are used (p. 700): "It seems reasonably clear that he impounded a specific portion of his estate, the bulk of it, to be used, first, for the support of his wife, *if required;* and, second, the remainder to go to his heirs as named in the provisions of the express trust found in the will." On page 701 the following is found: "If this language be construed, as we think it should be, as applying to the property devised to Westerfield in trust, and as giving to the wife the *right to the use of the annual income* in so far as it is required to maintain her in the style and comfort she had been accustomed to, and also a like right to the original fund or property devised in trust, if so required for a like purpose, then the matter is resolved into a very simple proposition wherein lies no serious difficulty in the way of the enforcement of the trust. The $5,000 or $10,000 to be devoted to charity, if the wife so desires, involves only a matter of mathematical computation, the limit being $10,000, the limit in other respects being what is required and reasonably necessary for the support of the wife in the style and

comfort in which she had been living." On page 703:
"They would make clear that as to this part of the estate
she had only the right of use reasonably necessary to sup-
port and maintain her as she had been accustomed to
living." On page 709 in the supplementary opinion writ-
ten by myself, the following language is used. "The re-
maining property was placed in trust .with Westerfield,.
with the right to his wife *to use the income from it,* or if
necessary the corpus thereof, for her maintenance and
support during her life, in her accustomed style, or to
give a part to charity, and the annual surplus income
after this was done, and the property in trust remaining
at her death, was to be divided among his relatives." At
the close of this opinion, the district court was directed
"To take an account of and ascertain what sum per an-
num is sufficient to support and maintain the appellee,
Ida M. Wharton, using the family homestead, according
to the style of living to which she was accustomed at the
time of the death of the testator, and to charge the pay-
ment of the same annually during her life upon the in-
come of the trust estate devised to Westerfield, and upon
the corpus thereof if the income is insufficient, and accord-
ing to the conditions of said trust." I think that these
quotations from the former opinions make it perfectly
clear that the intention of the court was that Mrs. Whar-
ton should have the use of the income so far as necessary
for her support, and that all that was necessary for her
to do when the case went back to the district court for an
accounting was to establish that she had expended a cer-
tain amount either of the income or of the corpus of the
trust estate, if the income was insufficient, in her support,
the only limit being that she did not exceed or go beyond
the style of living to which she had been accustomed in
her husband's lifetime.

While the contest of the will was pending, this income
was not accessible to her, and she could take nothing from
the estate except as allowed by the county court and paid
to her by the special administrator. The property was not

within her control, and, hence, if upon the accounting she had shown that the allowance made her by the county court was insufficient to enable her to live according to the prescribed standard, and that she had been compelled to use her own means for that purpose, she should have been allowed from the trust estate the sum she thus supplied, with interest from the time that she furnished the money. After the will was probated and established, and Westerfield entered upon the execution of the trust as trustee, the conditions were changed. From that time on there was nothing to prevent her from using the income, and, if necessary, a part of the corpus of the estate, in order to furnish her a living in her accustomed manner. From that time on all proceeds of the trust estate were at her absolute disposal, the only limitation being as to the disposition she could make of the surplus after her own support had been taken out. If the amount which she received from the income of the trust was not sufficient to satisfy her desires, she had the right to use a portion of the principal. The whole matter was within her own discretion. She was only accountable in case she exceeded the limitations as to her use of the fund. Her husband's intentions were not that she should skimp and save and create a large estate by living in a meager style and hoarding the sum thus saved, but his expressed intention was, and the language quoted from the opinions of the court I think clearly indicates, that the only right she has or had was to the *use* of the money, and not a right to its accumulation for the benefit of her heirs or donees. This was the very thing he sought to avoid. Of course, as soon as an accounting was had, it was then within the power of the court to ascertain what the expense of a course of living such as was contemplated by her husband is now, and will be in the future, and to fix and determine that amount and charge the payment of it upon the estate. This does not change the fact that, strictly speaking, she is only entitled to use this sum of $5,400 for the purposes designed; but though her expenditures may not in fact reach

this sum, or may exceed it, it is so approximately correct that in all probability it is as near as can be attained, and ought not to be re-examined, even if conditions change.

We are confined to the findings of the district court in regard to the facts. It found "that the sum per annum sufficient to support and maintain Ida M. Wharton, formerly Ida M. Boggs, using the family homestead, according to the style of living to which she was accustomed at the time of the death of the testator * * * is $5,400." The court further found: "The defendant Ida M. Wharton, since the death of the testator, has not lived and is not now living in the style intended by the testator, but has lived and is living in a less expensive style than that to which she was then accustomed, and it does not appear whether the actual expenses of her maintenance exceed the amount received by her from the allowance made by the county court and the net income from the trust estate." The decree further recites: "The court holds, as a matter of law, that the defendant Ida M. Wharton is not entitled to recover from the trust estate any part of the sum of $5,400 for any prior year, for the reason that the *evidence fails to show that during any such year she actually expended for her support more than she received during the* year from the trust estate." Under these findings of the district court, I think no other decree would be proper, on this branch of the case, than that which the trial judge rendered. I think the following cases tend to support these views. *Blanchard v. Chapman,* 22 Ill. App. 341; *Collister v. Fassitt,* 163 N. Y. 281; *Bailey v. Worster,* 103 Me. 170; *In re Simon's Will,* 55 Conn. 239; *Johnson v. Johnson,* 51 Ohio St. 446; *Garland v. Smith,* 164 Mo. 1.

As to the matter of the allowance for expenses in defending the will, the lower court found that $10,673.33 was her reasonable expenses incurred in the litigation in which the will was established. I think we are concluded by this finding in the absence of a bill of exceptions, and

that we have no right to set it aside upon statements made in briefs and oral arguments.

As to the costs in the matter of the accounting in the district court, I think it proper that they be paid out of the corpus of the trust estate, since the controversy was one made in good faith as to the proper disposition of that property. I think the judgment of the district court should be affirmed, except as to this last item, as to which I concur with Judge REESE.

ROOT, J., concurs in this dissent.

The following opinion on motions to correct and for rehearing was filed May 7, 1909. *Corrections allowed. Rehearing denied:*

1. **Wills:** CONSTRUCTION: ALLOWANCE TO WIDOW. The opinion filed and judgment entered in this court, *ante*, p. 328, corrected and amended so as to allow defendant's support from the trust es-tate instead of from the income thereof.

2. ———: ACTIONS: COSTS. At the suggestion of counsel for defendant, in order to prevent further litigation, the decree of the district court in the matter of the allowance to defendant for costs, expenses and attorneys' fees is affirmed.

3. **Interest.** The former holding refusing to allow defendant interest on the annual allowance of $5,400 for support adhered to.

PER CURIAM.

The opinion written upon the last appeal in this case is reported, *ante*, p. 328. Subsequently defendants filed a motion to correct alleged verbal errors in the opinion. The first clause in this motion seeks to correct a supposed error occurring at the close of the paragraph which discusses the allowance to defendant of $5,400 per annum to begin at the date of the death of the testator instead of January 1, 1908, as fixed by the judgment of the district court. In the opinion it is held that the defendant is entitled to the $5,400 annually from the date of the death of the testator, "to be paid out of the income of the trust estate, less the amount received by her," but without in-

terest. From an examination of the provisions of the will it appears that the right of defendant to her support out of the trust estate is not limited to the income, and therefore the use of the words "the income of" were inadvertently used, and it should have read, and is changed to read, "out of the trust estate," subject to a deduction of what she received from said estate during said time.

Again, objection is made to the holding, *ante,* p. 328, in which the decision of the district court is reversed on the question of the allowance of attorneys' fees paid by the defendant. It was stated by counsel for her in the argument on this motion that, rather than enter upon a re-examination of this question in the district court, and thus cause further delay in the final settlement of the estate and the further continuance of the litigation, defendant would prefer that the judgment of the district court giving her credit for $10,000, instead of the whole amount paid, should stand. The judgment will therefore be that that part of the decree will be affirmed.

It follows that the order for the judgment of this court should be changed to read as follows: The judgment of the district court, as to the questions herein reviewed and set aside, is reversed and the cause is remanded, with directions to said court to enter a supplemental decree requiring the trustee to pay to the defendant, Ida M. Wharton, out of the trust estate, a sum equal to the sum of $5,400, per annum, from June 1, 1895, to January 1, 1908, less such sums as have been heretofore paid to or received by her out of the trust estate, as established by the facts found and set forth in the decree of said court, and that all taxable costs of the last trial and of this appeal be taxed to the trust estate to be paid by the trustee.

Plaintiffs have filed a motion for a rehearing, which is supported by an elaborate brief which has been carefully considered. Some of the propositions contended for have already been disposed of doubtless to the satisfaction of plaintiffs. All others are found to question the correct-

ness of the former opinion. Those have received consideration, but we are satisfied with our holdings upon the points discussed. The motion is therefore overruled.

Defendants have also filed a motion for rehearing, alleging as ground therefor that this court erred in directing that a further accounting be had, since, as alleged, an accounting has already been made and all necessary facts found. The only matter now left for an accounting is as to the amount received by defendant out of the trust estate since the death of Mr. Boggs to be charged up against the $5,400 per annum to which she is entitled. To our minds the findings of the district court are not entirely specific upon this point, but, should it be so held by that court, or should the court be able to arrive at a satisfactory conclusion from the evidence offered upon the trial, which is not before us, no accounting will be necessary; if not, it will have to be made.

The second ground of the motion is error in not allowing defendant interest at the rate of 7 per cent. on the annual allowance of $5,400. While we adhere to the holding that the annual allowance must date from the death of the testator, we are entirely satisfied that defendant cannot, in equity, be held entitled to interest under the circumstances of this case. It would be against right and conscience to allow it.

The one other ground presented is upon the allowance to defendant of the costs and expenses in establishing the will, including her attorneys' fees paid in that behalf, and which has herein above been disposed of. Defendant's motion for rehearing is also overruled.

CORRECTIONS ALLOWED. REHEARING DENIED.