MARGERY H. SMULLIN ET AL., APPELLANTS, V. IDA M.
WHARTON ET AL., APPELLEES.

FILED APRIL 9, 1910.  No. 16,430.

1. Wills: CONSTRUCTION. Where a testator in his will devises specific
realty to his wife, bequeaths all his personalty to her absolutely
and unconditionally, and devises the rest and residue of his
estate to a trustee, with directions to give her during her life-
time the income therefrom and the proceeds of any sales made
pursuant to her written directions, and at her death to distribute
what is remaining of the trust estate among testator's collateral
relatives, the words "rest and residue", in absence of language
showing a contrary intention, mean the estate remaining after
payment of charges, debts and particular legacies, including the
payment of any statutory allowance fixed by the county·court
for the temporary maintenance of the widow and ·received by
her for that purpose.

2. ————: SUIT FOR AN ACCOUNTING: PLEADING: ESTOPPEL. Where a
petition in a suit to require the widow ·of a testator to account
to his brothers and sisters according to an oral promise to divide
among them annually, after deducting her living expenses, the
income of an estate which passed to a trustee under a residuary
clause in his will, alleged that she received from the estate $12,-
000 a year and that $5,000 a year was sufficient for her support,
answers denying these allegations and containing admissions
that she had received from the income of the trust estate part
of a statutory allowance fixed by the county court for her tem-
porary maintenance did not preclude her, as a matter of law,
from subsequently asserting that she should not be charged in
the accounting with the sum thus received.

3. Appeal: MANDATE: CONSTRUCTION. Where the district court, in
proceeding under a mandate to try an issue defined by the su-
preme court, determines the issue in harmony with the law and
facts, the mandate, upon a subsequent appeal, will not be so
construed as to make the decree erroneous.

4. Wills: SUIT FOR AN ACCOUNTING: ESTOPPEL. In an accounting be-
tween an estate which passed to a trustee under the residuary
clause of a will and testator's wife who was the principal bene-
ficiary of the trust, where the trial court was directed by man-
date of the supreme court to charge her with sums received by
her out of the trust estate, a rejected demand by her at a former
trial for a decree for the amount due her under the will, less
sums paid to her from the trust estate by order of the county

court for temporary maintenance, does not estop her from asserting, as a matter of law, that such payments were not chargeable to her, because they were expenses paid out of the income from the realty of which the testator died seized, as distinguished from the residue which passed into the trust estate; the record showing that the facts and law were equally within the knowledge of both parties, that plaintiffs were not misled, and that they did not change their position or withhold any proofs by reason of such conduct.

5. Appeal: REMAND: ESTOPPEL: PLEADING. A statement or admission made in a brief filed in the supreme court, to be available as an estoppel in the district court after the case has been remanded for further proceedings, must be pleaded and proved.

6. Judgment: INTEREST. In an accounting between an estate which passed to a trustee under the residuary clause of a will and testator's wife who was the principal beneficiary of the trust, a decree for the balance due her is a decree for the payment of money, and draws interest from the date of rendition at the rate of 7 per cent. per annum. Comp. St. 1909, ch. 44, sec. 3.

7. Wills: ACCOUNTING: CREDITS. In an accounting between a trust estate consisting of realty which passed to the trustee under the residuary clause of a will and testator's wife who was the principal beneficiary and entitled to receive from the trust estate an annual allowance of $5,400, she may be credited with the net proceeds of personalty bequeathed to her, where they were mingled with the income from the realty and used for the benefit of the trust estate by a special administrator when the will was being contested, she having been charged, on equitable grounds, with a sum received by her from the real estate of which testator died seized.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Reversed with directions.*

*John C. Cowin, James H. McIntosh* and *Francis A. Brogan,* for appellants.

*W. W. Morsman, contra.*

ROSE, J.

This appeal presents one phase of a protracted controversy over the residuary estate of George H. Boggs, who died without issue June 1, 1895, leaving a will through

which he gave his wife, Ida M. Boggs, now Ida M. Wharton, all of his personalty, the home property, and a lot in Omaha. The rest and residue of his estate was devised to Harry A. Westerfield, trustee, who was directed to pay to testator's wife during her lifetime the income therefrom and the proceeds of any sales made pursuant to her written directions, and at her death to distribute the remainder of the trust estate among testator's brothers and sisters and the children of any deceased brother or sister. When the will was offered for probate, it was contested by the collateral relatives described. The contest resulted in a judgment probating it and in the affirmance of that decision. *Boggs v. Boggs*, 62 Neb. 274. Later the contestants brought a suit in equity in the district court for Douglas county to establish and enforce a constructive trust for their benefit, with Mrs. Wharton as trustee *ex maleficio*, and to require her to account as such according to the terms of an oral promise to testator to divide among them annually the net income of the trust estate, after deducting her living expenses. John C. Wharton, the present husband of Ida M. Wharton, succeeded Westerfield as trustee, and was joined with her as a defendant. The suit, after a trial, was dismissed, and upon plaintiffs' appeal to this court it was held that the amount of any surplus liable to be divided among the plaintiffs was so uncertain and indefinite that a court of equity would not attempt to establish or administer such a trust. *Smullin v. Wharton*, 73 Neb. 667.

This position, however, was abandoned on rehearing. A constructive trust was subsequently declared in an opinion by Chief Justice HOLCOMB, and the following conclusion was reached: "The case is remanded, with directions to the district court to take an account of and ascertain what sum per annum is sufficient to support and maintain the appellee, Ida M. Wharton, using the family homestead, according to the style of living to which she was accustomed at the time of the death of the testator, and to charge the payment of the same annually during her life

upon the income of the trust estate devised to Wester-
field, and upon the *corpus* thereof if the income is insuf-
ficient, and according to the conditions of said trust;
second, to charge the said appellee as trustee in trust,
to pay and distribute annually all such surplus income
from the trust estate, if any there be after providing for
the maintenance of the appellee as aforesaid, and such
gifts to charitable purposes as she may desire to make
from time to time, not exceeding $10,000 in all, to the
brothers and sisters of the testator, share and share alike,
the issue of deceased brothers and sisters, if any such
issue, to take the share of the deceased parent; third, for
such other accounting and decree as may be necessary to
carry fully into effect the provisions of the constructive
trust declared to exist, and of the trust declared by the
will in Westerfield, and according to the views expressed
in the opinion by Chief Justice Holcomb, and of this opin-
ion." *Smullin v. Wharton,* 73 Neb. 705.

The district court, after the case reappeared there for
further proceedings, allowed Mrs. Wharton, by a decree
rendered June 1, 1908, to retain for her maintenance and
support $5,400 a year, beginning January 1, 1908. From
the allowance thus made she appealed to this court, in-
sisting it should begin at the death of testator, June 1,
1895, instead of January 1, 1908. This contention was
sustained, though part of the decree of June 1, 1908, was
not disturbed. *Smullin v. Wharton,* 83 Neb. 328. In
again remanding the case for further proceedings these
directions were given: "The judgment of the district
court, as to the questions herein reviewed and set aside,
is reversed and the cause is remanded, with directions to
said court to enter a supplemental decree requiring the
trustee to pay to the defendant, Ida M. Wharton, out of
the trust estate, a sum equal to the sum of $5,400, per
annum, from June 1, 1895, to January 1, 1908, less such
sums as have been heretofore paid to or received by her
out of the trust estate, as established by the facts found
and set forth in the decree of said court, and that all

taxable costs of the last trial and of this appeal be taxed to the trust estate to be paid by the trustee.    *    *    * The only matter now left for an accounting is as to the amount received by defendant out of the · trust estate since the death of Mr. Boggs to be charged up against the $5,400 per annum to which she is entitled.    To our minds the findings of the district court are not entirely specific upon this point, but, should it be so held by that court, or should the court be able to arrive at a satisfactory. conclusion from the evidence offered upon the trial, which is not before us, no accounting will be necessary; if not, it will have to be made." *Smullin v. Wharton,* 83 Neb. 346.

In the further proceedings thus directed by. this court, the trial court supplemented the decree of June 1, 1908, by the following findings and judgment:

"1. That Harry A. Westerfield, as special administrator, collected from the income of the real estate of which the testator died seized the sum of $27,653.15, and expended therefrom, for taxes and repairs and other expenses of maintaining the said property, the sum of $9,194.83, leaving the net yield from the income of the said real estate the sum of $18,458.32.

"2. That said Harry A. Westerfield, as special administrator, converted the personal property which passed under the will, and which is described in finding numbered 3 in said decree of June 1, 1908, as of the value of $10,000, and received therefrom the sum of $7,949.78, and expended in the process of collecting and reducing the same to money the sum of $201.73, leaving the net yield from the personal estate the sum of $7,748.05.

"3. That the amounts received by Harry A. Westerfield, as special administrator, and set forth in the two preceding findings, were mingled by him, as stated in the fifth finding of said decree of June 1, 1908, and out of the same he paid to the defendant, Ida M. Wharton, the sum of $20,700 on account of her allowance as widow, and paid to himself, for his services in reducing the per-

sonal property to money and collecting the same, the sum of $794.97, and for the expense of collecting the income of the real estate and for his services in caring for the said estate, the sum of $2,259.93, making a total retained by him for his services of $3,054.90, and paid for the expenses of erecting a monument upon the grave of George H. Boggs, deceased, the sum of $1,400. That the said special administrator paid to Irving F. Baxter, administrator with the will annexed, the sum of $1,051.47, that being the amount remaining in his hands after the foregoing disbursements. Upon the foregoing findings of fact and the findings of fact made in the decree of June 1, 1908, the court adopts the following conclusions of law, to wit:

"(a) The devise to Westerfield, trustee, as set forth in the will, being the devise of the 'rest and residue' of the estate of which the testator died seized, the gift of personal property to the defendant Ida M. Wharton, was exempt from the allowance made to her by the county court and from all debts and expense of administration; but she is not entitled to have the amount of said legacy, which was expended by the special administrator aforesaid, now set off against the sums charged to her in this accounting as partial payments of the annuity of $5,400, to which ruling the plaintiffs except, and to the refusal to allow such set-off the defendant Ida M. Wharton excepts.

"(b) The 'rest and residue' of the estate, which passed into and constituted the trust estate under the devise to Westerfield, trustee, was that which remained after payment of the allowance made by the county court to the widow, and all debts, specific legacies and expense of administration; and no part of the sum of $20,700, paid to the said Ida M. Wharton, as aforesaid, was paid out of the trust estate, to which the plaintiffs except.

"(c) The only sums which have been paid to or received by the said Ida M. Wharton out of the trust estate are specially found and set forth in the findings of fact made by the court in said decree of June 1, 1908, and

numbered 6 and 7, to wit: Total paid by H. A. Wester-
field, as trustee, $7,893.71, and total paid by J. C. Whar-
ton, as trustee, $4,182.50, making the aggregate sum of
$12,076.21; and there is now due the said Ida M. Whar-
ton for arrears of the annuity of $5,400, during the period
from June 1, 1895, to January 1, 1908, the sum of $55,-
873.79, to which plaintiffs except.

"It is therefore considered, ordered and decreed by the
court that the defendant John C. Wharton, trustee of the
express trust created by the will of George H. Boggs, de-
ceased, and his successors in trust, pay to the said Ida M.
Wharton out of the trust estate, the sum of $55,873.79,
with interest thereon at the rate of 7 per cent. per annum
from the date of this decree, in addition to the sums
heretofore decreed to be paid to her, and in satisfaction
of the sums due to her annually from the date of the death
of the testator of January 1, 1908, as determined by the
judgment and the mandate of the supreme court in this
cause, to which the plaintiffs except."

The record shows that Mrs. Wharton received funds
during three periods of the litigation as follows: From
the time the will was offered for probate until the contest
ended in 1902 Westerfield was in charge of the trust
estate as special administrator, and, under an order of
the county court allowing the widow $300 a month, paid
her from mingled funds derived from both personalty and
realty the sum of $20,700, a portion of the total allow-
ance.  During the period from 1902, after the will had
been probated, until Westerfield retired as trustee in
1905, he paid her as the net income from the realty the
sum of $7,893.71.  From the date John C. Wharton be-
came trustee until January 1, 1908, he paid her as net pro-
ceeds of the income from the realty the sum of $4,182.50,
It is obvious from an examination of the decree now
presented for review that the district court in the ac-
counting credited Mrs. Wharton with $5,400 a year from
June 1, 1895, to January 1, 1908, a period of 12 years and
7 months, or a total of $67,950; that she was charged

with two of the items named, one for $7,893.71, and the other for $4,182.50, both amounting to $12,076.21; and that the balance in her favor as established by the decree is the difference between the total credit of $67,950 and the total charge of $12,076.21 or $55,873.79. The trial court, however, refused to deduct from her maintenance fund of $67,950 any part of the item of $20,700. Plaintiffs argue that there was included therein and chargeable to her the sum of $16,198.39 derived alone from the realty, and in segregating it they refer to the first finding to establish the fact that the net income from the realty during the time Westerfield acted as special administrator was $18,458.32. They also refer to the third finding to show that during the same period the expense of collecting the income from the realty and the compensation of the special administrator amounted to $2,259.93. They insist that the difference between these sums, or $16,198.39, was received by Mrs. Wharton from the real estate, and that she should have been charged therewith. The reason for the contrary ruling of the trial court is found in the following conclusion of law copied from the decree assailed by plaintiffs: "The 'rest and residue' of the estate, which passed into and constituted the trust estate under the devise to Westerfield, trustee, was that which remained after payment of the allowance made by the county court to the widow, and all debts, specific legacies and expense of administration; and no part of the sum of $20,700, paid to the said Ida M. Wharton, as aforesaid, was paid out of the trust estate." This conclusion of law, which resulted in the failure "to charge to Mrs. Wharton the sum of $16,198.39, received by her out of the rent of the real estate devised to the trustee, during the period before the probate of the will," is the first error assigned.

1. The direction of this court to the trial court was to require the trustee to pay to Mrs. Wharton *"out of the trust estate,* a sum equal to the sum of $5,400, per annum, from June 1, 1895, to January 1, 1908, less such

sums as have been heretofore paid to or received by her *out of the trust estate.*" What went into the trust estate depends on the will, which, after giving absolutely certain real and all personal property to testator's wife, contains the following provisions:

"I give, devise and bequeath to Harry A. Westerfield, of Omaha, Nebraska, as trustee, all of the rest and residue of my estate, of whatsoever nature and kind, to be held by him in trust, upon the following trusts: (1) To pay out of the same all the expenses of maintaining the same and administering the said trust. (2) To deposit in bank to the credit of my said wife during her life, for her own use, all the net rents, issues and profits thereof, such deposits to be made daily as said rents, issues and profits are received and collected. (3) On the request in writing at any time or times of my said wife to sell any part thereof and to deliver to her, for her own use absolutely the proceeds of such sale, or otherwise invest the same in the name of said trustee and for the purposes herein specified, as she may direct. (4) Upon the decease of my said wife my said trustee shall without unnecessary delay, divide whatever of my said estate shall then be remaining in this trust equally, share and share alike, between my brothers and sisters. In case of the death of any of them before such division, leaving issue, such issue shall take the deceased parent's share."

What passed into the trust estate under this devise was the "rest and residue" of testator's estate, as that term is used in the will. In that sense the residue is the portion left after the payment of charges, liabilities and particular legacies. *Phelps v. Robbins,* 40 Conn. 250; *Collin's Appeal,* 148 Pa. St. 139, 23 Atl. 1108. The county court's monthly allowance of $300, a portion of which the widow received, was not a part of the rest and residue within the meaning of the residuary clause of the will, and was therefore not taken out of the trust estate. *Crew v. Pratt,* 119 Cal. 131. It was an expense of administra-

39

tion, and not a part of the residue. Nothing in the will indicates a contrary intention on the part of testator. It follows that, on the face of the mandate containing the direction of this court, the trial court did not err in holding that no part of the $20,700 received by Mrs. Wharton was paid out of the trust estate.

2. Plaintiffs argue that the judgment is not within the pleadings, and that defendants have conceded in their answers that the net rents collected by Westerfield, as special administrator, and paid over to Mrs. Wharton as part of the county court's allowance, should be charged against her. One of the averments upon which plaintiffs rely to sustain this contention is as follows: "That during the period of administration the said Westerfield paid to the defendant, Ida M. Wharton, on account of her allowance as widow, the total sum of $20,700, covering the sum of $300 a month, commencing June 1, 1895, and continuing to the 31st day of January, 1900; but for the remaining period of 13 months, from February 1, 1900, to March 22, 1902, the said Westerfield failed to pay said allowance of $300 a month, and no part of the income from the trust estate which accrued during the term commencing with the death of the testator and continuing to March 22, 1902, was paid to the said Ida M. Wharton, excepting as some portion of her allowance may have been paid out of such income."

The answers contain other admissions of a similar nature; but it should be observed in construing them that Mrs. Wharton was a defendant in a suit in equity to charge her as a trustee *ex maleficio*. It was alleged in the petition that she had received from the estate $12,000 a year, and that $5,000 a year was sufficient for her support. She denied these averments, and in addition undertook to state by way of admissions the sources, dates and amounts of her receipts. An examination of the answers, however, fails to disclose an admission that any sum received from any source should be charged to her. There is nothing in the record to show that plaintiffs

withheld any proofs on account of these admissions, or that the material facts were not shown by the evidence. When the litigation had been in progress for years, this court, after a trial *de novo* upon a record containing the pleadings, defined the issue which resulted in the decree now assailed. In the opinion the undetermined question is stated as follows: "The only matter now left for an accounting is as to the amount received by defendant out of the trust estate since the death of Mr. Boggs to be charged up against the $5,400 per annum to which she is entitled." *Smullin v. Wharton*, 83 Neb. 346. By formal mandate this remaining issue was referred to the district court, with directions "to enter a supplemental decree requiring the trustee to pay to the defendant, Ida M. Wharton, out of the trust estate, a sum equal to the sum of $5,400, per annum, from June 1, 1895, to January 1, 1908, less such sums as have been heretofore paid to or received by her out of the trust estate." *Smullin v. Wharton*, 83 Neb. 346. For the purpose of complying with this direction the trial court was referred to its own findings and to the evidence already taken, with permission to take further testimony, if necessary. That items involved in the accounting were to be considered was perfectly understood by plaintiffs. If the trial court looked beyond the issue defined by this court to construe answers previously filed, the decree shows that the construction adopted preserved the legal rights of Mrs. Wharton under the residuary clause of the duly probated will of testator. By this construction the trial court was left free to require plaintiffs to do equity according to the maxims invoked by them in calling their adversary to account. In these respects the rulings of the trial court will be approved.

3. Another point argued is stated as follows: "The mandate should be construed as it was intended. The meaning of the words, 'trust estate', in the mandate, is the real estate in question, whether considered before or after it came into the possession of the trustee." The pur-

pose for which the cause was remanded has already been shown. That purpose was stated in the mandate. It was construed below according to its technical import, if anything was left open for construction. In that light, error does not appear in the holding that no part of the $20,700 received by Mrs. Wharton was paid out of the trust estate. The mandate was not violated. If the decree entered was the one demanded by the law and facts, it was not made erroneous by the trial court's construction, and should not be made so by the same process on appeal. It is manifest that this assignment can only be made the basis of a reversal, if at all, when considered with some infirmity in the judgment itself.

4. The decree is also challenged on the ground that Mrs. Wharton is estopped by her conduct in this litigation from denying that the sum in dispute should be deducted from her allowance. In presenting one branch of this question, it is asserted that she admitted in court by motion that a part of the item of $20,700 received by her was derived from real estate which would pass to the trustee under the terms of the will. Plaintiffs in their brief say: "After the district court had completed the accounting and had ascertained the facts incorporated in the decree of June 1, 1908, the defendant, Ida M. Wharton, presented a motion to the lower court, and caused it and the refusal of the court to grant it to be incorporated into the decree. A part of the motion is as follows: 'And thereupon, on the facts above found, the defendants demand that the court decree the trustee, and his successors in trust, to pay to the defendant, Ida M. Wharton, out of the trust estate the sum of $5,400 for each year, ending on the first day of June, commencing June 1, 1895, that being the date of the death of the testator, less the sum which, during the year, was paid to her from the trust estate by Harry A. Westerfield while acting as special administrator, or while acting as trustee under the express trust, or by John C. Wharton while acting as

trustee, with interest on the difference thus found at the rate of 7 per cent. per annum.' "

This demand was made after 13 years of litigation. According to plaintiffs' statement, it was made after the district court had completed the accounting and ascertained the facts incorporated in the decree of June 1, 1908. It is perfectly apparent, therefore, that the demand or admissions were not intended to disclose or concede additional facts. It was intended as an assertion of a legal or equitable right arising from facts already before the court. Both the facts and the law applicable were equally within the knowledge of plaintiffs and defendants. There is no intimation anywhere that plaintiffs were misled, or that they changed their attitude or position in any respect, or that they were prevented from asserting any right by reason of the language appearing in the demand quoted. Fraud is not even suggested. No inequitable or illegal relief was procured by the admissions. When acquiescence by plaintiffs would have concluded defendants, plaintiffs refused to be bound by the conduct which they assert is now binding on defendants. Plaintiffs' hostility as litigants was unabated. They did not terminate the litigation by consenting to the decree demanded by their adversary. Neither the demand for judgment nor the admissions influenced the district court. The decree ignored the demand and did not respond to the admissions. When the cause was remanded, the distinction between a devise of the real estate and a general devise of the rest and residue was directly presented to the court for the first time by defendants. The question was within the issue. The relief sought and obtained by plaintiffs required them to do equity. On a record presenting such a situation, there was nothing to prevent Mrs. Wharton from changing her position in a matter of law, or from asserting her legal and equitable rights under the residuary clause of testator's will. In view of the entire history of this case, the conduct mentioned did not constitute an estoppel.

5. It is further argued that Mrs. Wharton by other conduct in the course of the litigation is estopped to deny that the amount in controversy should be deducted from her allowance. This estoppel is based on statements or arguments found in the briefs of her counsel on former hearings in this court. In considering this question, it will be necessary to readvert to the issue which resulted in the decree. The mandate of this court directed the district court "to enter a supplemental decree requiring the trustee to pay to the defendant, Ida M. Wharton, out of the trust estate, a sum equal to the sum of $5,400, per annum, from June 1, 1895, to January 1, 1908, less such sums as have been heretofore paid to or received by her out of the trust estate." The trial court was referred to its own findings and to the evidence already taken, with permission to hear additional proofs, if necessary. No question of estoppel was suggested by the mandate. On the issue defined by this court, Mrs. Wharton asserted her rights as matter of law on facts already established. If plaintiffs controverted those rights on the ground that she was estopped from asserting them on account of statements made by counsel in her briefs in this court, why were the facts not pleaded and proved? The record contains no such pleading or proof. Is the decree of the trial court to be set aside because of undisclosed facts constituting an estoppel? Is proof of such facts to be considered for the first time in the appellate court? These questions are answered in the negative by a fundamental principle of appellate procedure which prevents reviewing courts from considering evidence not submitted to the trial court and which was not available to that tribunal. The conclusion is that the decree cannot be set aside on this ground.

6. Another assignment of error relates to interest on the decree at the rate of 7 per cent. per annum. The decree directs the trustee to pay to Mrs. Wharton out of the trust estate the sum of $55,873.79. It is unmistakably a decree for the payment of money, and interest is

controlled by the following provision of statute: "Interest
on all decrees and judgments for the payment of money
shall be from the date of the rendition thereof at the rate
of seven dollars upon each one hundred dollars annually
until the same shall be paid." Comp. St. 1909, ch. 44, sec.
3. In allowing interest the district court properly applied
the statute. No error of which plaintiffs may justly com-
plain has been found in the record.

7. On cross-appeal Mrs. Wharton insists the district
court erred in refusing to allow her a credit of $6,696.58
for proceeds of personal property bequeathed to her. The
bequest on which this credit rests precedes the residuary
clause in the will, and is as follows: "I give and bequeath
to my said wife, absolutely and unconditionally, all the
personal property of whatever nature of which I may die
seized and possessed, including notes, mortgages, stocks,
bonds, city or county warrants, certificates of deposit,
cash on hand or in bank, mining stock, uncollected rents,
bills receivable, and in fact all personal property of what-
ever kind or wheresoever located, which I may possess at
the time of my death." This bequest gave the legatee,
Mrs. Wharton, absolutely and unconditionally all the per-
sonal property of which testator died seized. *Smullin v.
Wharton,* 73 Neb. 667, 705. The probating of the will,
however, was resisted by plaintiffs for nearly seven years.
In consequence, the legatee, Mrs. Wharton, never ob-
tained possession of her legacy. Instead, Westerfield, as
special administrator, converted it into money, mingled
the proceeds with the income from the real estate, and,
with the exception of $1,051.47, expended the mingled
funds in the course of the special administration. By the
second finding quoted in the statement of the case it is
established that the sum of the net proceeds realized from
the personalty was $7,748.05. Out of the funds with
which these proceeds had been mingled the sum of
$1,051.47 was turned over to the administrator with the
will annexed, leaving $6,696.58, for which Mrs. Wharton
received no credit in the accounting. This item was de-

rived from the personalty bequeathed to her absolutely
and unconditionally. Was she entitled to this credit? It
has been held already that the property which passed
into the trust estate under the devise to Westerfield as
trustee was what was left after payment of charges, ex-
penses of administration and particular legacies. If this
holding is correct, proceeds of the personalty amounting
to $6,696.58 were wrongfully appropriated to the pay-
ment of obligations from which Mrs. Wharton and her
bequest had been exempted by the will. The effect of the
ruling of the district court in refusing to allow credit
for this item was to deprive her of her legacy to that ex-
tent and to sanction the enhancement of the trust estate
by the conversion of her private property. The account-
ing is between Mrs. Wharton and the trust estate. On
equitable grounds the trial court, as prayed by plaintiffs,
deducted from the permanent maintenance fund of $67,-
950, allowed her under the will and established by decree,
the sum of $7,893.71 which had been paid to her out of
the real estate of which testator died seized. Under such
circumstances equity by means of a credit of $6,696.58
will restore that sum to her from the trust estate which
was wrongfully enhanced at her expense.

The reason for the contrary holding of the trial court
is not stated in the findings; but plaintiffs justify the
refusal to credit Mrs. Wharton with the net proceeds of
her legacy on the ground that the personal estate is a
primary fund for the payment of debts and legacies. In
support of this doctrine reference is made by plaintiffs to
sections 67, 68, 93, ch. 23, Comp. St. 1909, and also to the
recent case of *Schade v. Connor*, 84 Neb. 51, where the
following language is quoted by this court from *Suther-
land v. Harrison*, 86 Ill. 363: "In the administration of
assets the personal estate is a natural and primary fund
for the payment of debts and legacies, and, as a general
rule, must first be exhausted before the real estate can
be made liable, and it will not be exonerated by a charge
on the real estate, unless there be express words, or a

plain intent, in the will, to make such exoneration." This rule was made inapplicable to the present inquiry by the terms of testator's will and the following provisions of section 155, ch. 23, Comp. St. 1909: "The estate, real or personal, given by will to any devisees or legatees, shall be held liable to the payment of the debts, expenses of administration, and family expenses, in proportion to the amount of the several devises or legacies, except that specific devises and legacies, and the persons to whom they shall be made, may be exempted, if it shall appear to the court necessary in order to carry into effect the intention of the testator, if there shall be other sufficient estate."

The rejected credit of $6,696.58 should have been allowed and added to $55,873.79, the amount of the decree. For the purpose of correcting this error, the judgment of the district court is reversed, at the costs of plaintiffs, and the cause remanded to the district court, with directions to enter a decree directing John C. Wharton, trustee of the express trust created by the will of George H. Boggs, deceased, and his successors in trust, to pay to Ida M. Wharton out of the trust estate the sum of $62,570.37, with interest from August 9, 1909.

REVERSED WITH DIRECTIONS.

SEDGWICK, J., not having heard the argument, took no part in the decision.

ROOT, J., dissenting.

I cannot, for the reasons hereinafter stated, concur in the opinion of the majority in this case. The record is replete with proof that, until the last hearing in the district court, the litigants treated all of the estate referred to in the fifth paragraph of Mr. Boggs' will as the rest and residue of the estate. The transcripts filed in this court disclose that Mr. Boggs died June 1, 1895; that Westerfield acted as special administrator until he quali-

fied as trustee March 22, 1902; that the probate court allowed Mrs. Wharton $300 a month for her support pending the settlement of said estate, and that she received from the estate up to March 22, 1902, $20,700, and no more. There was, therefore, due her March 22, 1902, upon the order to pay $300 a month, $3,600. With these facts uncontradicted in the record, at the time the judgment of the district court was reversed and the cause remanded in 1909, upon the last preceding appeal, the district court was directed to render a judgment in Mrs. Wharton's favor at the rate of $5,400 per annum from June 1, 1895, and to deduct therefrom such sums as she may have received from the trust estate. The amount Mrs. Wharton had received from the estate subsequent to March 22, 1902, was set out in the transcript. If, as counsel for Mrs. Wharton argue and the majority opinion holds, the trust estate consists of the rest and residue of the Boggs' estate, and that rest and residue can have no legal existence until all claims against the estate, including the widow's allowance, as well as the costs of administration, are paid, it was demonstrated beyond controversy that the rest and residue did not exist and could not be ascertained March 22, 1902, nor at any time intermediate that date and the submission of the cause in this court, because at no time had Mrs. Wharton been paid the aggregate of her annual allowance since the death of Mr. Boggs. At no stage of the litigation has she asserted that the money paid to her subsequent to March 22, 1902, was not paid out of the trust estate. Her counsel concedes that charge was proper, and the majority opinion places its seal of approval thereon. The writer hereof confesses that he cannot understand how the resignation of Westerfield as administrator and his qualification as trustee can transmute the property described in the fifth paragraph of the will into a "rest and residue" or trust estate, and yet that resignation and qualification seems to be the only basis upon which the judgment of the district court can be affirmed. There is, it seems to me, but

one reasonable and logical construction to be given the opinions and judgments of this court in the case at bar, and that is, the rest and residue of the estate of Mr. Boggs is that part of his estate described in the fifth paragraph of his will, and that Mrs. Wharton should be charged against her annual allowance all sums she may have received from that part of her late husband's estate since June 1, 1895. The findings of the district court now disclose that amount to be $16,198.39. That sum should have been charged against Mrs. Wharton by the district court, and, it having failed to do so, the judgment now before us should be modified to that extent.

It seems to me that the argument concerning Mrs. Wharton's right to her widow's allowance in addition to the support provided for in the will, and in reference to the fund out of which there should be paid the expense of administering the estate, is immaterial and irrelevant at this stage of the case, and was likewise immaterial in the district court. This cause has never been remanded generally, but in each instance the judgment and mandate directed the district court to determine a particular issue or to do and perform definitely described acts. The cause was last remanded with instructions to the district court to enter judgment in Mrs. Wharton's favor for $5,400 per annum since Mr. Boggs' death; less such sums as she may have received from the trust estate. No other subjects were before that court for adjudication. In attempting to adjudicate any other fact or right, it would review and revise the judgment of this court. Not only did the judgment of this court dispose of all things presented hostile thereto, but it foreclosed as well every argument and proposition that might have been presented or interposed to mitigate or mould that judgment. *West v. Brashear,* 14 Pet. (U. S.) *51; *Sibbald v. United States,* 12 Pet. (U. S.) *48; *Hill v. Hoover,* 9 Wis. 12; *Pierce v. Kneeland,* 9 Wis. 19, 25; *Piper v. Sawyer,* 78 Minn. 221. So it seems to me this court adjudged and determined that whatever rents and profits of the estate described in the fifth para-

graph of Mr. Boggs' will have been paid to Mrs. Wharton were paid to her out of the trust estate; that to affirm so much of the judgment of the district court as failed to apply any part of those rents is to ignore our former judgment and concede to the district court the right to review the final judgments of this court.

What has been said applies with redoubled force to so much of the opinion of the majority as grants Mrs. Wharton relief upon her cross-appeal. The subject matter of that appeal is foreign to the things referred to in the mandate of this court, and was not before the district court at the last hearing.

LETTON, J., concurs in this dissent.