In the Matter of the Estate of ANNIE E. HALL, Deceased.

Surrogate's Court, Niagara County, June 30, 1932.

*Tuttle, Rice & Stockwell*, for the petitioner.

*John O. Chapin*, special guardian.

GOLD, S. Annie E. Hall died a resident of the city of Niagara Falls, N. Y., on the 8th day of February, 1931, leaving a last will and testament dated the 5th day of November, 1930, which was admitted to probate in this court on April 10, 1931.

The first ten clauses of the will bequeath a total of $5,400 among ten persons by general legacies. The eleventh paragraph provides as follows:

" (*Eleventh*) Felix Hall $\left.\right\}$ the House on Corner of 10 St.
& $\left.\right\}$ Money from lots under hill
Marjory $\left.\right\}$
All money in banks & stocks & all
Hotel moneys."

The succeeding six paragraphs specifically bequeath certain per--sonal effects belonging to decedent.

The will was prepared by testatrix and, like many other holographic wills, leaves much to be desired in clarity of expression.

The will does not contain a clause providing for the distribution of the residue of the estate.

Subsequent to her death it appeared that the personal property in the estate was insufficient to pay general legacies. The testatrix owned at the time of her death a house and lot at the corner of Tenth street and Grove avenue, two lots on Whirpool street near Chasm avenue and certain property on Depot avenue, on which is a hotel, a private residence and a barn.

The petition presented to the court requests a construction of the will to determine whether or not the general legacies are a charge upon the real estate and to identify the properties passing to the various devisees and to identify certain of the legatees.

The intent of the testator must be given effect if ascertainable. (*Matter of Silsby*, 229 N. Y. 396; *Matter of Buechner*, 226 id. 440; *Eidt* v. *Eidt*, 203 id. 325, 328.)

The special guardian contends that the real estate devised under paragraph eleven, above quoted, should be charged with the payment of the general legacies.

In *Matter of Lilienthal* (139 Misc. 225), wherein numerous cases on the subject have been collected and discussed, the surrogate evolves six points for consideration in determining whether or not to charge the realty, to wit: (1) " Reduction in testator's personalty and increase in realty after the execution of the will." (2) " Blending of realty and personalty in residuary clauses." (3) " Presence of power of sale." (4) " Known deficiency of personalty at time of execution." (5) " Directions as to transfer taxes," and (6) " Relationship of claimants."

On the first point there is nothing before the court showing the

condition of the estate of testatrix at the time of the execution of the will and, therefore, it cannot be determined whether there has been any increase or decrease in either type of property. If the evidence on this point was material to the general legatees, the burden was upon them to establish that there had been a change between the time of the execution of the will and the death of the testatrix. (*Brill* v. *Wright*, 112 N. Y. 129, 136.)

On the second point there is no residuary clause designated as such in the will executed by decedent.

On the third point there is no power of sale contained in the will.

On the fourth point there is no evidence before the court as to the amount of the personal estate of the decedent or as to her knowledge as to its amount. It is the duty of the claiming general legatees to support the burden of proof on this point. (*Brill* v. *Wright, supra.*)

On the fifth point there is no provision in the will of decedent relative to the payment of transfer taxes from any particular funds.

On the sixth point every intendment is in favor of the son of a decedent as against collaterals in any degree. The relationship of the beneficiaries of the will to the testatrix is not to be overlooked, and the presumption favors children rather than strangers. (*Carley* v. *Harper*, 219 N. Y. 295; *Scott* v. *Stebbins*, 91 id. 605.)

The primary fund for the payment of general legacies is the personal estate. In the event that the personal estate is insufficient, the general legacies must abate *pro rata*, or if there is no personal estate then the general legacies must abate entirely, unless the will expressly charges their payment on the realty; or an intent can be spelled out of the will and the circumstances before the court. (*Matter of Mould*, 117 Misc. 1; affd., 236 N. Y. 582.)

The proceeds of sale of specified property which is to be sold is just as specific a legacy as if the property itself had been given. (*Matter of Matthews*, 122 App. Div. 605, 607.)

Consequently, the bequest of the house on the corner of Tenth street and money from lots under the hill is specific. It was the intent of testatrix that Felix Hall, the only son of decedent, and Marjory, his wife, should receive this specific property and it is not chargeable with the payment of general legacies.

If there is by interpretation of the will, rather than by express language, a residuary clause in the will, it must be contained in the last sentence under paragraph 11, which reads as follows: " All money in banks & stocks & all Hotel moneys."

If this can be construed as a residuary clause in the will, the general legacies would have to be paid from it and the balance, if any, so designated paid to Felix Hall and his wife.

In order to reach a conclusion on this point, it is necessary to consider the intent of the testatrix. The first general legacy bequeaths $2,000 to a grandchild, Genevieve Hall. The next two legacies, amounting to $1,000 each, are in favor of two sisters. She next bequeathed $200 each to six children of a brother. The last of the general legacies, to wit, $300, is to a family servant.

It is quite apparent that if the legacy to Felix Hall and Marjory Hall of all moneys in the bank and stocks and hotel moneys is specific, then the legacies " first " to " tenth " would fail. It is not reasonable to assume that she prepared in her own handwriting a will bequeathing these general legacies with no intention that these general legacies would be paid.

I am, therefore, compelled to reach the conclusion that the general legacies are not a charge against the house on the corner of Tenth street, or the money from lots under the hill; that that part of the eleventh paragraph bequeathing all " Money in banks & stocks & all Hotel moneys " were not intended to be paid to Felix Hall and Marjory Hall with the resultant annulment of the previous ten bequests. I, therefore, hold that it was intended that the payment of the bequests last above referred to was subject to the payment of the general legacies.

Let a decree be entered accordingly.